UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                      )
                                            )
PIERPORT DEVELOPMENT & REALTY, INC.,        )    Bankruptcy No. 12 B 09546
                                            )
        Debtor.                             )
                                            )

## MEMORANDUM OPINION ON CHAPTER 7 TRUSTEE'S OBJECTION TO CLAIM NO. 6

Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO (the "Union") filed a proof of claim in this chapter 7 case of the debtor Pierport Development & Realty, Inc. ("Debtor" or "Pierport") docketed in Debtor's claim registry as Claim No. 6 (the "Claim") in the amount of $344,876.32, of which $319,279.69 is alleged to be secured. Barry A. Chatz, as chapter 7 trustee of the bankruptcy estate (the "Trustee"), objects to Claim No. 6 and seeks disallowance of portions of the Union's Claim. The Trustee further objects on the ground that Claim No. 6 overstates the extent to which the Union's Claim is a secured claim. For reasons discussed below, the Trustee's objection will be partly sustained and partly overruled by separate order, and the Union will be allowed a secured claim in the amount of $30,050.00 and an unsecured claim in the amount of $224,876.32.

## BACKGROUND

On September 27, 2011, a U.S. District Court Judge in the Northern District of Illinois entered a judgment order in favor of the Union against the debtor in district court case No. 10 C 7800, Pierport Development & Realty, Inc. ("Pierport" or "Debtor"), awarding the Union $238,534.84 plus post-judgment interest on the unpaid balance (the "Judgment Award").

(Objection to Claim Ex. 1, at 5–6.) The District Court Judge further ordered Pierport to provide a bond in the amount of $90,000. *Id.* To collect on its judgment, the Union instituted a supplementary proceeding in that case under 735 ILCS 5/2-1402, and a Citation to Discover Assets (the "Citation") was issued. That was served on Pierport on October 12, 2011. On December 16, 2011, Pierport's sole shareholder, Peter Arenson, appeared for examination in that supplementary proceeding. Under Illinois law, discussed below, service of the Citation on Pierport gave the Union a statutory lien on all unencumbered property interests that Pierport held or thereafter acquired (the "Citation Lien").

On March 12, 2012 (the "Petition Date"), Pierport filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* The Trustee conducted an investigation of the assets and liabilities of the bankruptcy estate (the "Estate") and determined that as of the Petition Date, Debtor's assets that could potentially be liquidated for benefit of all creditors consisted of certain equipment and vehicles, the value of which to the Estate was estimated at $30,350.00.[1] In addition, the Trustee identified as part of the Estate three potential fraudulent transfer claims against various entities (the "Fraudulent Transfer Claims"), including payments to Debtor's sole shareholder Peter Arenson, and to certain affiliated businesses (together with Arenson, the "Arenson Parties").

Negotiations between the Trustee and the Arenson Parties resulted in a proposed settlement agreement, wherein the Arenson Parties would pay a total of $325,000, and in exchange the Trustee would assign to Arenson the Estate's interest in any and all machinery,

---

[1] The Trustee also investigated certain receivables that were allegedly owing from Chicago Public Schools but determined that no collections were expected from that source.

equipment and vehicles, all other tangible assets, the name and any trademarks of Pierport, and any cemetery plots or properties (the "Transferred Assets"). The settlement also included a mutual release, whereby the Trustee would agree to release all Estate claims against the Arenson Parties arising out of "alter ego, piercing of the corporate veil, preference avoidance, fraudulent transfer avoidance, or other such theories . . . ." The Trustee sought Court approval of the original proposed settlement agreement, but the Union objected on the ground that the agreement purported to release not only the Trustee's claims but also any third-party claims against the Arenson Parties. (One wonders how bankruptcy attorneys for parties A and B think they can dispose of claims by a third party!). The settlement agreement was revised to specifically provide that no claims aside from those held by the Trustee would be released (the "Revised Settlement Agreement").

The Union still objected to the Revised Settlement Agreement, citing concerns that language in the new agreement was ambiguous and that might bear on whether the Union could pursue related claims against the non-debtor Arenson Parties. When pressed on that objection at the hearing, Union counsel did not specify language objected to. Moreover, Union counsel did not object or raise an issue as to the Trustee's valuation of the Transferred Assets. The Revised Settlement Agreement was then approved. It was also ordered that the Union's Citation Lien would attach to and be secured by settlement proceeds to the extent attributable to the Transferred Assets as of the effective date of the settlement agreement. The Union has asserted that claim in Claim No. 6 filed against the bankruptcy estate. The claim objection by the Trustee followed.

## JURISDICTION AND VENUE

Jurisdiction lies over this proceeding under 28 U.S.C. § 1334(b), and authority over this matter has been referred here by Internal Operating Procedure 15(a) of the District Court. This matter concerns allowance or disallowance of claims against the estate and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue lies here under 28 U.S.C. § 1409(a).

## DISCUSSION

A validly filed proof of claim constitutes prima facie evidence of the claim's validity. Fed. R. Bankr. P. 3001(f). A party objecting to the proof of claim has the initial burden to produce some evidence or legal point to overcome this rebuttable presumption. *In re Orseno*, 390 B.R. 350, 353–54 (Bankr. N.D. Ill. 2008). The burden then shifts back to the claimant to meet the objection and establish the claim. *Id.* (citing *In re Chapman*, 132 B.R. 132, 143 (Bankr. N.D. Ill.1991)). "[T]he ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim." *In re McCoy*, 355 B.R. 69, 72 (Bankr. N.D. Ill. 2006).

### Allowance of the Union's Claim

The Trustee initially objects to Claim No. 6 on the ground that $90,000 of the claim amount is duplicative. A claim may be disallowed to the extent that such claim is unenforceable for a reason other than the claim being contingent or unmatured. 11 U.S.C. § 502(b)(1); *In re Hood*, 449 Fed. Appx. 507, 510 (7th Cir. 2011). A claim that seeks duplicate recovery for the same debt is partially unenforceable to the extent of the duplication. *See In re Handy Andy Home Improvement Ctrs.*, 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("[I]t is axiomatic that one cannot recover for the same debt twice."); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d

951 (Ill. 2002) ("For one injury there should only be one recovery irrespective of the availability of multiple remedies and actions.").

The Union's Claim for $334,876.32 includes not only the Judgment Award but also an additional $90,000 based on Debtor's pre-petition obligation to provide a bond. But the bond requirement did not saddle Debtor with additional debt in excess of the Judgment Award. It was merely a mechanism to enforce the Judgment Award by providing the Union another source of recovery; such is the nature of a bond. The Union would not be able to recover the same debt from both Debtor and a separate bond procured by Debtor. Therefore, $90,000 of the Union's claim is unenforceable. The Union in its brief conceded to this part of the objection, and the Trustee does not otherwise dispute the remaining amounts due by reason of the Judgment for which the Union seeks allowance. Therefore, the Trustee's objection on this point will be sustained, and the Union's claim will be allowed in the amount of $254,876.32. What remains is the issue as to whether any part of that debt is secured by the citation lien under Illinois law.

### Secured Status of the Union's Allowed Claim

The parties' main dispute concerns the validity and reach of the Union's Citation Lien that is the asserted foundation for the Union's secured claim. "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of the creditor's interest in the estate's interest in such property . . . ." 11 U.S.C. § 506(a)(1). The remaining value of the creditor's interest is an unsecured claim. *Id.*

The Trustee argues that the Union has no secured claim because the Citation Lien expired automatically under Illinois law six months after Debtor first appeared for the supplementary proceeding in the District Court case. In the alternative, Trustee argues that the secured portion

of the Union's claim should be limited to the value of proceeds received for the Estate's interest in the Transferred Assets that were valued in the Motion to Approve Settlement at $30,500.00. The Union argues that its Citation Lien attaches to all proceeds received from the Arenson Parties under the Revised Settlement Agreement.

### *The Citation Lien did not Expire*

Trustee argues that the Union's citation lien expired on May 16, 2012. Therefore, without a valid lien, the Union can have no secured claim at all. In Illinois, a lien arising from a Citation to Discover Assets expires six months after the citation respondent's first personal appearance. Ill. S. Ct. R. 277(f). The court that entered judgment may also grant an extension of the six-month period. *Id.*; *see In re Marino*, 201 B.R. 234, 247 (Bankr. N.D. Ill. 1996). Pierport first appeared in the supplementary citation proceedings on December 16, 2011, through its sole shareholder, Peter Arenson. Therefore, under Illinois law, any lien the Union had on Pierport's assets arising from the Citation was to expire on May 16, 2012. However, prior to such expiration date, Debtor filed this bankruptcy case.

The Bankruptcy Code contains a provision that extends any applicable statute of limitations for actions against the debtor barred by the automatic stay. *In re Coan*, 96 B.R. 828, 832 (Bankr. N.D. Ill. 1989). Section 108 of the Code provides:

> [I]f nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> > (1) the end of such period, including suspension of such period occurring on or after the commencement of the case; or

>   (2) 30 days after notice of the termination or expiation of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c). Section 108(c) also preserves a creditor's lien that would otherwise expire under nonbankruptcy law. *Id.*; *Shales v. Lanas Constr., Inc.*, 2010 WL 3842362, at *6 (N.D. Ill. Sept. 24, 2010).

The parties dispute whether the Union was thereafter required to take affirmative steps after the bankruptcy was filed to prevent expiration of its Citation Lien under Illinois law. However, section 108(c) does not require a creditor to take some affirmative action to prevent expiration of its citation lien. *See Coan*, 96 B.R. at 832–33 ("[V]alid liens do not expire during the pendency of the bankruptcy case, despite the creditor's failure to take action to enforce or perfect the lien within the time period prescribed by state law.").

The parties agree in their briefs that the Union's Citation Lien was still in effect as of the Petition Date. Expiration of the Union's Citation Lien on May 16, 2012 was thereafter prevented by section 108(c) subject to terms of that provision. The Trustee has not claimed that the bankruptcy stay under any provision listed in § 108(c)(2), such as § 362, was ever terminated or modified with respect to the Union's lien or that the Union received any notice purporting to do so. Therefore, pursuant to section 108(c) of the Bankruptcy Code, the Union's Citation Lien did not expire.

Trustee argues for a contrary outcome based on *Marino v. Chrysler Credit Corp. (In re Marino)*, 201 B.R. 234 (Bankr. N.D. Ill. 1996). He notes that the creditor in *Marino* sought extension of the six-month expiration period for its citation lien three times, one of which was during the pendency of that bankruptcy case. From this, Trustee infers that similar action is

always required to prevent expiration of a creditor's citation lien. No such inference is warranted. The motives of the creditor in *Marino* were not discussed in the *Marino* Opinion (and would well have been the same motive of someone wearing both belt and suspenders for extra safety). The creditor's decision in *Marino* to seek an extension in that case does not translate into a universal requirement for all citation lien creditors under section 108(c).

Therefore, with the Citation Lien intact, the remaining issue is to determine the extent to which the Union's lien attaches to proceeds of the Revised Settlement Agreement.

### *Union's Lien on Settlement Proceeds*

Under Illinois law, a citation lien attaches to a debtor's "nonexempt personal property, including money, choses in action, and effects." 735 ILCS 5/2-1402. Unless avoided in the bankruptcy case, valid liens pass through a bankruptcy unaffected. *E.g., In re Zimmerman*, 276 B.R. 598, 601 (Bankr. C.D. Ill. 2005). However, a pre-petition lien does not attach to rights or actions by the trustee of a bankruptcy estate that did not exist prior to the bankruptcy filing. *In re Tek-Aids Indus., Inc.*, 145 B.R. 253, 256 (Bankr. N.D. Ill. 1992) (holding that estate's right to bring a preference action under section 547 arises as a special power under the Bankruptcy Code).

Trustee determined that as of the Petition Date the value of the Estate's interest in pre-petition assets of Debtor available for liquidation for benefit of creditors was $30,500.00. That value has not been challenged by the Union. The Estate's interest in those assets was sold to the Arenson Parties as part of the Revised Settlement Agreement approved by court order (the "Order Approving Settlement"). (Dkt. No. 94.) The Order Approving Settlement expressly preserved the Union's rights under its Citation Lien in the "Transferred Assets," which were

defined and valued in the Revised Settlement Agreement, and any proceeds derived from them. (*Id.*) The Trustee's brief does not dispute that the Union's Citation Lien, if valid and unexpired, attached to $30,500.00 of the total settlement proceeds.

The remaining settlement proceeds constitute consideration for release of the Trustee's causes of action against the Arenson Parties, including the Fraudulent Transfer Claims. The Union argues that its Citation Lien may or may not attach to the remaining proceeds, depending on whether or not the Order Approving Settlement precludes it from bringing any claims against the non-debtor Arenson Parties. That Opinion did not so rule either expressly or impliedly. The Union may well have its own separate claim against Debtor. If it has such a claim, the Trustee has no claims to benefit from it. For reasons discussed in a recent Opinion in this case, to the extent the Union has individual claims against the Arenson Parties that were not derivative of its status as a creditor in Debtor's bankruptcy case, the Order Approving Settlement did not affect those claims. (Op & Order Reopening Hr'g, Dkt. No. 135) That Opinion reasoned: "When a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee . . . has no interest in the suit." *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994). The Trustee's settlement of his own claim did not in any way settle the Union's claim and the Union has no claim against proceeds of the claims belonging to the Trustee.

The basic issue here is whether or not the Union can meet its burden to identify property in addition to value of the Transferred Assets subject to its Citation Lien. As properly noted by the Trustee, his Fraudulent Transfer Claims arose as of the date of the bankruptcy filing and were not subject to any creditor's pre-petition lien. Since the Union's Citation Lien did not extend to the Trustee's Fraudulent Transfer Claims, which were compromised by the Trustee thorough the

Revised Settlement Agreement, it cannot claim a secured interest in the proceeds received for the Trustee's release of those claims. Therefore, the Union's secured claim is limited to the proceeds attributable to the Transferred Assets, $30,050.00.

## CONCLUSION

The Trustee's Objection will therefore be sustained in part and overruled in part. The Union's Claim No. 6 will by separate order be allowed in the total amount of $254,876.32. The Union's Citation Lien, which did not expire during the pendency of the bankruptcy case will be held to attach to $30,050.00 of proceeds received by Trustee through the Revised Settlement Agreement. The remaining amount of Claim No. 6 will be treated as an unsecured claim in the amount of $224,876.32.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of _____ 2013.

MAY - 3 2013